## PETERS *vs.* THE PUBLIC ADMINISTRATOR.*

### *In the matter of the Estate of* EMMA HUGHES.

WHERE an order for a grant of administration to the Public Administrator had been made, but in consequence of an appeal and stay of proceedings, the letters had not been issued ; and during the pendency of the appeal, the Legislature passed an act vesting all the right of the People of this State, to the assets of a foreign intestate, illegitimate, in the children of the deceased mother of the illegitimate, and directing administration to be granted to the said children, some or one of them :—Held, that the Surrogate having power by law to revoke his previous order, and no letters of administration having been issued, the provisions of this special act were not in conflict with his previous judicial determination.

The authority of the Public Administrator is superseded, whenever letters of administration are granted upon the estate, by any Surrogate having jurisdiction, at any time within six months after the Public Administrator became vested with the power of an administrator upon such estate. And if any relative of the intestate, entitled to administration, who was not residing in the city of New-York, at the death of the intestate, or was not served with proper notice, shall, within three months after the grant of administration to the Public Administrator, apply for administration, the same shall be granted to him.

Where several persons are equally entitled to administration, letters will be granted *ex parte* to any one of them without citing the others. A citation

* See pp. 100, 125, *supra.*

is necessary only, where there is some person who has a preference to the applicant.

A person not entitled to administration cannot be joined as administrator with one who is entitled, on the suggestion of the Surrogate, and without or against the consent of the party entitled.

F. S. KINNEY, *for Petitioner.*

J. S. THAYER *and* CHARLES EDWARDS, *for Contestants.*

THE SURROGATE. Henry T. Peters applies for letters of administration, under an act of the Legislature in the following terms : " All the right, title and interest of the People of this State, in and to the personal estate which belonged to Emma Hughes, at the time of her death, and which was then in this State, or owing to her therein, is hereby vested in Henry T. Peters, and the other children of the deceased mother of the said Emma Hughes, and in the issue, if any there be, of any child of the said mother who has died leaving issue, such issue to take the same share their parent would have taken, if living; and administration shall be granted to the said children, or some or one of them, either alone, or associated with some other suitable person, as the Surrogate may order."

The intestate, Emma Hughes, was an illegitimate, domiciled at the time of her death, at London, and leaving assets in the State of New-York. An application was some time since made to me, by Richard Hughes, the son of Mary Ann Hughes, mother of the intestate, for letters of administration. On that occasion, I intimated the opinion that the deceased being an illegitimate child, and by the law of the place of her domicil, incapable of having any kin through her natural parents, the succession to her property was broken, and her assets became *bona vacantia,* wherever they might be : that her personalty in the State of New-York, did not pass to the British crown, but that the right to dispose of her assets as vacant goods, devolved upon the government of this State. It being unnecessary, however, at that time, to decide as to the ultimate distribu-

26

tion of the property, I refrained from passing on that point, and denied the application for administration by Richard Hughes, on the ground that the act of the Legislature (*Laws* 1845, *ch.* 236), giving the mother of an illegitimate, or in case of the death of the mother, her relatives, the surplus of the estate, and the right to administer thereon, did not apply to an illegitimate domiciled abroad.   The Public · Administrator having also applied for letters; an order was therefore made, granting him the administration.   Before the letters were issued, an appeal was taken to the Supreme Court, and further proceedings were stayed.   Meanwhile, the Legislature have passed the act under which the present petition has been presented.

The Public Administrator, and Mr. Charles Edwards on behalf of the British crown, claim to be heard in opposition to the application.

I do not see what interest either of them have in the matter.   It is a universal rule, to which I know of no exception, that the grant of administration always follows the law of the *situs* of the assets.   Even if I am wrong in the view advanced, as to the absence of any right on the part of the Queen to this personalty, a point which I have reserved, her rights are not in any way affected by the grant of administration, but on the contrary, they may be enforced, such as they be, on the distribution of the estate. The comity of nations, which has allowed the law of the domicil to prevail, as to the distribution of the property of an intestate, cannot be extended to an interference with the local law in regard to the administration, and in the very teeth of express legislative enactment.   It is by authority of the laws of this State, alone, that any person can be authorized to administer these assets ; my own power issues from the same source, and in the administration of that branch of the law whereof I have jurisdiction, I can recognize no other rule of action than the statutes of the State, in all cases where official authority is to be conferred in the name of the People.   I consider, therefore, that in regard

to the present application, I am not bound to hear any objections on the part of the British crown.

Having heretofore made an order granting administration to the Public Administrator, the constitutional right of the Legislature to overrule a judicial decision, though made in reference to a grant of official authority, might well be doubted, unless authority were at the same time given to re-hear the case, or revoke the former order. But there was no need in the present instance to give such authority, inasmuch as it was already conferred upon the Surrogate by the existing statute in relation to the Public Administrator. By Section 31 2 *R. S., p.* 185, 3*d ed.,* it is very plainly declared, that " the powers and authority of the Public Administrator, in relation to the estate of any deceased person, shall be superseded" " where letters of administration shall be granted upon such estate, by any Surrogate having jurisdiction, at any time within six months after the Public Administrator became vested with the powers of an administrator upon such estate." If, therefore, letters had in fact already been issued to the Public Administrator, there would be no inconsistency in now granting letters to some other person, if entitled, and such new grant would *ipso facto* vacate the former letters. Much more then in this case, where only an order for the grant was entered, and no letters have ever been issued, is it in harmony with the law to issue letters now to any person entitled, and thereby vacate the former order?

By Section 32, 2 *R. S., p.* 185, 3*d ed.,* if any relative of a deceased person, entitled to administration, shall within three months after the Public Administrator has become vested with the powers of an administrator on such estate, apply to the Surrogate of New-York for letters of administration, the same shall be granted to him, on proof that he did not reside in the city at the time of the death of the intestate, or that residing in said city, the proper legal notice was not served upon him. I advert to this section, for the purpose of showing that in the instance

there contemplated, no notice or citation is required by the statute to be given to the Public Administrator, on an application, which if granted, must have the effect to supersede his authority. Why should it then be given in the present matter, when the Legislature has pointed out the parties to whom administration is to be granted? What interest has the Public Administrator, to form the subject of protection? His duty, if letters had already issued to him, would be simply on notice of granting other letters (See Section 33, *Ibid.*), to deliver the assets over to the new administrator. But here, no letters have ever issued, and it is beyond my comprehension to see how the Public Administrator is affected, or how it is any part of his official duty, to look after the grant of administration on an estate, when about to be made to parties claiming it, under express legislative authority.

There seems to me no doubt, that it was perfectly competent for me to issue the letters now asked for, *ex parte ;* and if I am correct in the views I have presented, the Public Administrator has no right to be heard in objection to the application. This is, however, a strict view, and in deference to the learned counsel who appeared, as well as from the desire to arrive at a correct conclusion, all that could be urged against the petition, as submitted by both Counsel, was in fact heard. The substance of such objections, except so far as they relate to matters I have already disposed of, was : First, that letters ought not to be issued to one of the persons named in the act of the Legislature, without citing the others : Secondly, that the applicant, Henry T. Peters, was not a child of the mother of Emma Hughes ; and, thirdly, that the Surrogate has, and is bound to exercise a discretion in the selection of some " suitable person," to associate with the applicant. The answer to these positions is : 1. That where parties are equally entitled to administration, no citation is necessary, the statute (§ 36, 2 *R. S., p.* 139, 3*d ed.*), requiring a citation, only where there are persons who have a " prior right," and

such has always been the practice. (*In the goods of Roger-son*, 2 *Curt.*, 656 ; *In the goods of Southmead*, 3 *Curt.*, 28 ; *Ibid.*, 55.) Besides, the petition shows, that the other children of Mary Ann Hughes are in England, which affords a sufficient explanation why Peters alone applies for letters.

Secondly, the act of the Legislature under which the petitioner claims, expressly names him in this way, " Henry T. Peters, and the other children of the deceased mother of the said Emma Hughes." When subsequently the same act says, that administration shall be granted " to the said children, or some or one of them," it necessarily means by the " said " children, " Henry T. Peters, and the other children." Besides, the words " *other* " children, is an express statutory definition, as it were, of the relationship of Peters, and shows that he is well entitled to administration under the words " said children " at the close of the act. Thirdly, I do not think the right to nominate the person to be associated with the " children, or some or one of them," belongs to me. If it does, however, I should be inclined to exercise it in harmony with the wishes of the applicant, simply taking care that the person he selected as his associate, was a proper or suitable person. But I cannot suppose this feature of the statute was framed for the purpose of giving me the power to impose arbitrarily upon any of these children, such person as I might choose to designate as an associate. We must look at this act in connection with the circumstances of the case, and the general scope and plan of the law relative to administration. The bare fact of the passage of the act implies an acquiescence, so far as such an admission is of any effect, in the idea I threw out on the former application, that the property belonged to the State. The manifest design of the Legislature was, then, to vest all the rights of the State, in the maternal relatives of the deceased illegitimate, and as Mr. Peters' claim to be a legal relative of the mother of the deceased had been denied, his name alone is inserted, to preclude any such question, and the legal relatives are in-

troduced as "other children," the most careful anxiety being thus evinced to give him an undoubted and unquestionable title. Disposition is then made of the administration in conformity with the general principle and policy of the law in such cases, by directing the grant to be made to the parties vested with the right to succeed to the estate; and as they are all equally entitled, authority is given to make the grant to any one of them.

By Section 35, 2 *R. S., p.* 139, 3*d. ed.*, the Surrogate is authorized to grant "administration to one or more competent persons, although not entitled to the same, with the consent of the person entitled, to be joined with such person, which consent shall be in writing, and be filed in the office of the Surrogate." The act under which Mr. Peters now asks for letters, contains a clause authorizing administration to be granted to all, some or one of the parties, "either alone or associated with some other suitable person, as the Surrogate may order;" and it seems to me impossible to construe this paragraph in any other way, than as intending a provision in relation to an associate administrator, analogous to the one just cited from the general statute. As in such cases the trust is a joint one, and the bonds and security are joint, the consent of the person entitled is very properly made requisite to such a joint administration. So likewise, I think it would be a perversion of the language of the Legislature to interpret it as directing me to take upon myself the power to associate an administrator with Peters, in direct opposition to his wish, and against his consent; to set aside his own nomination and choice, and impose an associate upon him. If the person he selects, were an incompetent or improper person, I would take the suggestion of any one as to such a fact, and investigate it, but in the absence of any objection of that kind, to interpose arbitrarily, and overrule the wishes of the only party in interest before me, on the motion of those who have not the slightest legal concern in the matter, would be an exercise of mere judicial caprice. I

construe the term "suitable person," to mean *proper* and *competent* person, and to intend a *legal* suitability, and not some vague and undefinable quality, under cover of which a Judge might find room to indulge his pleasure, without the responsibility of assigning a reason. The legal disqualifications, either by the rule of the Ecclesiastical Law (*Williams on Executors*, 136, 320, 368), or as declared by our statute (§ 33, 2 *R. S., p.* 139, 3*d. ed.*), are well settled, and if the person selected by the applicant as an associate, does not come within the limit of such exceptions, I ought to consider him a suitable person. I do not mean to say that it is my duty to appoint him if he is competent by the rule of the statute alone, for in cases where the Court has a discretion among a number of persons equally entitled, regard may be had to other circumstances. Where there are several persons equally entitled to administration, the Surrogate has the right of election, but then this discretion must be exercised in subservience to some rule. Where there is no material objection on the one hand, or reasons for preference on the other, the Court puts the administration into the hands of that person amongst those of the same degree of kindred, with whom the majority of parties interested are desirous of intrusting the estate; but such a thing was never heard of, as the Court forcing upon a party entitled, a joint administration against his consent. (*Elwes* vs. *Elwes*, 2 *Cas. Temp. Lee*, 573; *Budd* vs. *Silver*, 2 *Phill.*, 115, *Id.*, 101; *Warwick* vs. *Greville*, 1 *Phill.*, 123; *Coppin* vs. *Dillon*, 4 *Hagg.*, 376; *Leggatt* vs. *Leggatt*, 1 *Lee's Cas.*, 348; *Dampier* vs. *Colson*, 2 *Phill.*, 55; *Coe* vs. *Hume*, 4 *Hagg.*, 398.) No ground of objection recognized by the statute, or by the rules of practice, as prevailing in the Ecclesiastical Courts, being urged against the person nominated by Mr. Peters, and the latter being the only party in interest before the Court, I can have no hesitation in confirming the selection he has made. Those claiming to contest the grant of administration, have neither shown a right to intervene, nor have

even suggested, supposing they had such a standing as would entitle them to object, a single solitary reason why I should withhold my approval from the nomination made. The letters must therefore issue to Mr. Peters and the associate he has selected, on their giving the requisite security.